IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM DONALD HARVEY,                    Case No. 3:11-cv-00108-HZ

       Petitioner,                          OPINION AND ORDER

    v.

GARY KILMER,

       Respondent.


THOMAS J. HESTER
Office of the Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204

    Attorney for Petitioner


ELLEN F. ROSENBLUM
Attorney General
KRISTEN E. BOYD
Oregon Department of Justice
1162 Court Street, NE
Salem, OR  97301

    Attorneys for Respondent

Hernandez, District Judge.

Petitioner, an inmate in the custody of the Oregon Department of Corrections brings this habeas corpus action pursuant to 28 U.S.C. § 2254. He raises claims of trial court error and ineffective assistance of trial counsel. For the reasons set forth below, the Petition for Writ of Habeas Corpus (#2) is DENIED.

## BACKGROUND

In 2005, Petitioner was charged in Lincoln County, Oregon, with Assault in the Second Degree (Count 1); Assault in the Fourth Degree (Count 2); Interference With Making a Report (Count 3); and Harassment (Count 4). The charges arose from an incident at his home involving a woman, Kim Nunes ("Nunes"). Petitioner pleaded "not guilty"; waived his right to a jury; and was tried in a bench trial before the Lincoln County Circuit Court.

At trial, Nunes testified, in part, that she spent the night at Petitioner's home; that hit her with his fist on the left side of her face; that she required surgery and still suffered from numbness and loss of feeling. (#21, Ex. 104 Trial Tr. at 16-30.) Nunes's two sons, ages 11 and 13 at the time, testified they had spent the night at Petitioner's house; in the morning, they were watching TV, waiting for their mom to take them to the bus stop, when they heard "a smack"; within a few seconds of the "smack" their mom ran out from the bedroom saying "he hit me." (*Id.* at 42-67.) The otolaryngologist who examined Nunes two days after the incident, and who later surgically repaired the fractures on the

2 - OPINION AND ORDER -

left side of her face, and one of the police officers responding to the incident who interacted with Nunes, also testified for the prosecution.

Petitioner testified in his own defense.  He acknowledged he hit Nunes but claimed that he was acting in self-defense after she threw a cigarette rolling machine and then slapped him.  (*Id.* at 200-244.)  In support of the self-defense argument, trial counsel called two witnesses to testify to Nunes's reputation in the community for violence and volatility.[1]  (*Id.* at 244-251; 278-283.) The defense also called the emergency room physician who first examined Nunes.  He testified to his examining Nunes, ordering x-rays of her jaw, and the radiologist's "equivocal identification" of a lower jaw fracture and recommendation for a facial CAT-scan if the clinical exam supports the need for it.  (*Id.* at 182-200.) During closing arguments, counsel argued that intervening events after Nunes was released from the emergency room probably caused the serious injuries not visible on the x-rays taken immediately after the incident, but seen on a cat-scan taken a day later.

The trial court found Petitioner guilty on all counts.  The court specifically found that the injuries to Ms. Nunes were intentional, serious, protracted physical injuries and supported the Assault II conviction; the court also did not find Petitioner's

---

[1]Securing the testimony of one of the reputation witnesses required that counsel successfully move for a continuation mid-trial.  (#21, Ex. 104 Trial Tr. at 251-277.)

two defense theories credible.  (*Id.* at 315-316; 319.)

At sentencing, Petitioner moved to proceed pro se.  (#21, Ex. 105, 1-13.)  The court granted Petitioner's motion with trial counsel remaining as a legal advisor solely for the sentencing proceeding.  (*Id.* at 8-13.)  Petitioner made an objection to his criminal history classification. After receiving evidence from the State, and not withstanding that the objection was untimely, the court made a finding that Petitioner's criminal history classification was correctly represented.  (*Id.* at 15-21.) Petitioner also moved for the court to clarify its findings of guilt on the record.  (*Id.* at 22.)  The court made a finding on the record that the State had disproved Petitioner's defense theories beyond a reasonable doubt.  (*Id.* at 22.)  Petitioner was sentenced on Count 1 (Assault in the Second Degree) to the mandatory 70 months imprisonment under Measure 11.  The court imposed a concurrent term of nineteen to twenty-four months on Count 2 (Assault Fourth Degree); and suspended sentencing on Count 3 (Interference With Making a Report) and Count 4 (Harassment), but imposed sixty months probation.

Petitioner filed a motion for new trial, alleging prosecutorial misconduct for failure to turn over police reports. (#21, Ex. 116.)  The motion was denied.  Petitioner appealed his conviction.  The Court of Appeals affirmed without opinion, and Petitioner did not seek review.  (#21, Ex. 109.)

Petitioner, proceeding *pro se*, filed for post-conviction relief raising claims of trial court error and ineffective assistance of counsel. (#21, Ex. 110.) The PCR trial court denied relief on all claims. (#21, Exs. 139 and 142.) Petitioner appealed, but the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. (#21, Exs. 147 and 146.)

Petitioner raises the following claims in his federal petition for habeas relief.

A.   Ineffective Assistance of Counsel:

(a)   Trial counsel failed to conduct a proper and adequate investigation:
  (1)   By not having x-rays taken of the alleged victim's left-face, immediately following the incident believed to have caused the injuries, examined and analyzed by an expert in x-ray technology and presenting that evidence at trial [to prove Petitioner's innocence].
  (2)   By not searching police and court records for evidence of the alleged victim's past history with police, the criminal justice system and public courts for civil disobedience [to impeach the alleged victim's credibility].

(b)   Trial counsel failed to impeach the alleged victim's credibility:
  (1)   By not presenting evidence known to trial counsel about the victim's history of violent, combative misconduct, charged and uncharged, against other men.

(c)   Trial counsel failed to challenge the sufficiency of evidence presented at trial, such as evidence:
  (1)   Submitted to prove that the plaintiff actually <u>caused</u> any serious injuries to the alleged victim.
  (2)   Submitted to prove that the alleged victim had actually <u>sustained</u> a 'serious physical injury' as defined by statute.

      (3)  Submitted to prove that children 'witnessed' assaultive conduct, allowing for a 'felony' enhancement to plaintiff's fourth-degree assault charge.

      (4)  Submitted to prove that the defendant <u>was not</u> acting in self defense when he struck the alleged victim.

B.   Prosecutial [sic] Misconduct

(a)  The state failed to disclose material evidence which was favorable to the defense's claim of self-defense, or capable of proving actual innocence.

C.   Judicial Error:

(a)  The Post-conviction Court erred as follows:

      (1)  The court denied plaintiff's multiple requsts for Court Orders allowing plaintiff's Radiologist to examine the x-rays taken of the alleged victim's left-face on the morning of May 18, 2005 at approx. 7:30 hrs. where such x-rays could have proven, and still can prove, plaintiff's actual innocence.

      (2)  The Court erred by finding that the plaintiff's *Brady* claims (<u>See</u> *Prosecutorial Misconduct*, supra) were procedurally barred because trial counsel failed to compel disclosure of police reports <u>exclusively</u> in the prosecution's possession, custody and control, when there was no evidence or information submitted to show that counsel knew of the reports' impeaching or favorable nature, and the Court's finding of a procedural bar was therefore based upon an unreasonable determination of the facts, and completely unsupported by evidence presented in the post-conviction proceeding.

### DISCUSSION

With the assistance of counsel, Petitioner argues he is entitled to relief because "competent counsel, presenting a self-defense case at trial, would have fully investigated and presented evidence of the putative victim's prior acts of violence in a similar situation, which was known to [Petitioner] at the time of

6 - OPINION AND ORDER -

the incident." (#35, Brief at 7.)  He further argues the State PCR

trial court's findings are not entitled to deference because, in

its opinion letter, the PCR trial court erroneously refers to

evidence being presented to a jury.  (*Id.* at 14.)

Respondent argues Petitioner is not entitled to relief on any

claim because the PCR court reasonably determined that trial

counsel was not ineffective and that petitioner was not prejudiced,

and the PCR court decision is entitled to deference.  He further

argues Petitioner only briefs Grounds for Relief A(a)(2) and

A(b)(1), and thus fails to meet his burden of proof for habeas

relief as to all other claims.  (#35, at 2.)

## I.  **Unargued Claims**

A petitioner seeking federal habeas relief bears the burden of

showing the court he is entitled to relief.  *Woodford v. Visciotti*,

537 U.S. 19, 24 (2002); *Davis v. Woodford*, 384 F.3d 628, 638 (9th

Cir. 2004), *cert. denied* 545 U.S. 1165 (2005).  Under § 2254(d), a

petitioner must show that the adjudication of his claims on the

merits in State court was: "1) contrary to, or involved an

unreasonable application of, clearly established Federal law as

determined by the Supreme Court of the United States; or 2) resulted

in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court

proceeding."  Petitioner has not satisfied his burden of proof for

habeas relief with respect to the claims that are not argued in his

supporting brief.  Therefore, habeas relief on the un-argued claims is precluded.[2]

**II.  The Merits**

    A.  <u>Standards of Review</u>

    Following passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus shall not be granted unless the adjudication on the merits in State court was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review. *Williams v. Taylor*, 529 U.S. 362, 386-389 (2000). In *Cullen v. Pinholster*, ___ U.S. ___; 131 S.Ct. 1388, 1398-1402 (April 4, 2011), the Court reiterated the highly deferential nature of federal habeas review, and limited federal review "to the record that was before the state court that adjudicated the claim on the merits."

    "'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time

---

    [2]The Court, nevertheless, reviewed the record as to the un-argued claims and determined they would not entitle Petitioner to relief.

    8 - OPINION AND ORDER -

the state court renders its decision." *Lambert v. Blodgett*, 393
F.3d 943, 974 (9th Cir. 2004) *cert. denied*, 126 S. Ct. 484 (2005).
An "unreasonable application" of clearly established federal law
occurs when "the state court identifies the correct governing legal
principle from [the Supreme] Court's decisions but unreasonably
applies that principle to the facts of the prisoner's case."
*Lambert*, 393 F.3d at 974 (citing *Williams*).   "The state court's
application of . . . law must be *objectively unreasonable*."
*Williams*, 529 U.S. at 411 (emphasis added).   "[A] federal habeas
court may not issue the writ simply because that court concludes in
its independent judgment that the state court decision applied
clearly established federal law erroneously or incorrectly."
*Woodford*, 537 U.S. at 24-25 (2002)(internal citations omitted).
Rather, "a habeas court must determine what arguments or theories
... could have supporte[d] the state court's decision; and then it
must ask whether it is possible fairminded jurists could disagree
that those arguments or theories are inconsistent with the holding
in a prior [Supreme Court] decision." *Pinholster*, 131 S.Ct. at
1402 (citing *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct.
770, 786 (2011)).   "A state court's determination that a claim
lacks merit precludes federal habeas relief so long as 'fairminded
jurists could disagree' on the correctness of the state court's
decision."   *Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011)
(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

9 - OPINION AND ORDER -

The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002). In this proceeding, the Court reviewed the state PCR trial court decision.

In reviewing a state court decision, "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F. 3d 992, 999 (9th Cir. 2004). This is a standard that will be met in few cases. *Id.* at 1000. When unchallenged, State court determinations of factual issues "shall be presumed to be correct." 28 U.S.C. §2254(e)(1); *Miller-el v. Cockrell*, 537 U.S. 322, 340 (2003). A Petitioner may rebut the presumption of correctness with clear and convincing evidence. *Id.*

The clearly established federal law governing claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *Pinholster*, 131 S.Ct. at 1403. Under *Strickland*, a petitioner must prove: 1) that counsel's performance fell below an objective standard of reasonableness and, 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Strickland*, 466 U.S. at 687-88. "A reasonable probability is a probability

sufficient to undermine confidence in the outcome[,]" that is, "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

"Judicial scrutiny of counsel's performance must be highly deferential," *id*. at 689, and "a court must indulge [the] strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment." *Pinholster*, 131 S.Ct. at 1407 (quoting *Strickland*) (internal quotation marks omitted.) The reasonableness of counsel's conduct must be evaluated in light of the facts of the case and the circumstances at the time of representation. *Strickland*, 466 U.S. at 690.

Overall, a doubly deferential standard of review applies to federal habeas review of ineffective assistance of counsel claims: deference under § 2254 and deference under *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420 (2009); *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010).

B. <u>Analysis</u>

In Grounds for Relief A(a)(2), Petitioner alleges trial counsel's representation was constitutionally deficient when counsel failed to conduct a proper and adequate investigation "by not searching police and court records for evidence of the alleged victim's past history with police, the criminal justice system and public courts for civil disobedience [to impeach the alleged

victim's credibility]." In Grounds for Relief A(b)(1), Petitioner alleges trial counsel's representation was constitutionally deficient when counsel failed to impeach Nunes's credibility "by not presenting evidence known to trial counsel about the victim's history of violent, combative misconduct, charged and uncharged, against other men." The essence of Petitioner's argument in these two claims is that trial counsel failed to effectively impeach Nunes's credibility.

The PCR trial court stated in its opinion letter:

> [T]he cross examination of the victim, the investigation of the victim's injuries, and counsel's arguments to the court and to the jury all appear to clearly meet the constitution's minimally adequate standard for professional legal services. And Petitioner, despite a vigorous effort, simply has not been able to show otherwise. Since he has the burden of proof on his claims, his petition must fail.

(#21, Ex. 139, at 2.) In its Findings of Fact, Conclusions of Law the PCR court further specified, in relevant part:

> 4. No additional witnesses existed who were available to offer credible, admissible testimony. Trial counsel presented two independent witnesses who offered testimony about the victim's alleged reputation for violence. Not calling Mr. Riddell as a witness was a tactical decision, not an oversight, based on Mr. Riddell's statement that he would poison the defense.[3]
>
> 5. The police reports and other documents cited by petitioner did not establish any habitual conduct by the victim and were neither admissible nor persuasive as impeachment evidence. This claimed evidence was not habit evidence and was simply inadmissible character evidence intended to discredit the victim.

---

[3]Mr. Riddell was the alleged victim in a pending criminal matter in which Ms. Nunes was charged with assault.

12 - OPINION AND ORDER -

6. Petitioner's repeated self-impeachment overshadowed and undermined any attempts to impeach the victim. ***

* * *

12. The trial court did not allow trial counsel's attempted impeachment. Trial counsel cross-examined the victim (Ms. Nunes) about the victim's pending criminal case, but the court would not allow further inquiry. Both petitioner and trial counsel knew about the pending criminal case, but Ms. Nunes' alleged victim (Michael Riddell) would not cooperate with petitioner's defense. Instead, Mr. Riddell's testimony would have been damaging to the defense.

13. All police reports were available to petitioner and trial counsel, and the State did not suppress any evidence. The police reports and other alleged impeachment evidence was neither admissible nor persuasive. The State specifically informed trial counsel of the pending criminal case against petitioner's victim, and trial counsel personally knew the alleged victim in that criminal case.

14. Regarding Toledo Police Department Case No. 04-2123, Mr. Riddell was convicted of assaulting Ms. Nunes, who was also petitioner's victim. Ms. Nunes was not charged with criminal conduct. Instead, Ms. Nunes was the victim. This 2004 incident is a case in which the same victim Mr. Harvey was convicted of assaulting had been previously assaulted by another defendant. This police report was not in the Deputy District Attorney's possession, nor known to the DDA, prior to petitioner's trial. Regardless, this material was neither admissible nor impeaching of Ms. Nunes, who was the victim and whose attacker was convicted and sentenced.

15. Regarding the letter authored by Ms. Nunes, she was apparently the victim of a domestic assault in 2004. *** Again, Ms. Nunes was the victim in a case in which the person charged with the assault was convicted, which is not impeachment material.

16. Regarding Newport Police Department Case No. 02N-02815, no criminal charges were ever filed against either party involved.  *** Again, Ms. Nunes was the victim in a case in which charges were not filed against Ms. Nunes, and this case was not proper impeachment material. ***

13 - OPINION AND ORDER -

> 17. The materials relied upon by petitioner were not admissible as character evidence or for impeachment purposes. Even if admissible, the documents lacked sufficient persuasive power to alter petitioner's convictions. In all but one of these cases, Ms. Nunes was the confirmed or alleged victim. In the one case cited by petitioner where Ms. Nunes was the alleged perpetrator, the State relayed this case to trial counsel. Trial counsel knew that Mr. Riddell, the alleged victim of Ms. Nunes, would not cooperate and would poison the defense if forced to testify.

(#21, Ex. 140 at 3-4, 6-8.)  The PCR court concluded Petitioner was not denied the right to effective assistance of counsel, as articulated by the Supreme Court in *Strickland v. Washington*. (#21, Ex. 140, at 8.)

Petitioner argues the state PCR court's adjudication is not entitled to deference because the court incorrectly stated in its opinion letter that the case was tried to a jury - an "erroneous recitation of the operative facts." (#35, at 15.)  The Court finds this argument unavailing because Petitioner characterizes a segment of a phrase entirely removed from its context.

Read in its entirety, the PCR court's opinion letter reveals the court found no basis on which to grant Petitioner relief "mostly for the reasons set forth in detail in Defendant's Memorandum...[;]" but also because "there was more than enough evidence presented to convict petitioner of Second Degree Assault[,]" and despite a vigorous effort, Petitioner had not shown counsel's representation was deficient. (#21, Ex. 139.) Petitioner's contention that the factual underpinning of the PCR proceeding was erroneous is not supported by the record. In

context, the reference to a jury is clearly a ministerial error and not operative to the PCR court denying Petitioner relief. Accordingly, the PCR court's adjudication is entitled to deference.

To prevail on his claims, Petitioner had to show the PCR court that counsel's representation fell below objective standards of reasonableness, and that the outcome of the proceeding would have been different but for counsel's deficiencies. The criminal trial transcript and PCR record support the PCR court's determination that counsel's representation was constitutionally adequate and that Petitioner had not shown otherwise. Because Petitioner did not meet his burden under *Strickland*, the PCR court adjudication was neither contrary to, nor an objectively unreasonable application of *Strickland*, and federal habeas relief is precluded.

## CONCLUSION

Based on the above, the Petition for writ of habeas corpus is DENIED, and this action is dismissed with prejudice. Pending motions are denied as moot. The court declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 24 day of October, 2012.

Marco Hernandez
Marco A. Hernandez
United States District Judge